Wanamaker, J.
This is an original action in quo warranto brought in this court by plaintiff against John G. Price, as attorney general.
Plaintiff contends the power sought to be vested in the attorney general of Ohio by virtue of Section 13560, General Code, as amended 108 Ohio Laws, (part 1), 158, is in violation of certain provisions of the Constitution of Ohio.
Section 1 of that act reads:
“The prosecuting attorney or assistant prosecuting attorney, except as hereinafter provided, shall be * * * authorized at all times to appear before the grand jury for the purpose of giving information relative to a matter cognizable by it or advise upon a legal matter when required. Such attorney may interrogate witnesses before such jury when it or he deems it necessary, but no other person shall be permitted to remain in the room with the jury while the jurors are expressing their *52 views or giving their votes on á matter before them. In * * * matters or cases which the attorney general is required to investigate or prosecute by the governor or general assembly, he * * * shall have and exercise any or all the rights, privileges and powers conferred by * * * law upon prosecuting attorneys, and any assistants or special counsel designated by him for that purpose shall have full power and authority to act for and on behalf of the attorney general in any matter or case in which he is authorized to act, and any stenographer designated by him for that purpose shall have the same privileges and authority in relation to the proceedings conducted by him as are provided in case of the official stenographer of the county acting at the request of the prosecuting attorney and shall make disclosure of testimony taken or heard only to such grand jury or the attorney general and such assistants and special counsel, and all proceedings in relation to such matters or cases shall be under the exclusive supervision and control of the attorney general; and for the purpose of any investigation or prosecution conducted by the attorney general pursuant to direction by the governor or general assembly, the court of common pleas of any county or a judge thereof, on written request of the attorney general, shall order the sheriff to call together a special grand jury from the bystanders or neighboring citizens of fifteen good and lawful men having the qualifications of grand jurors, who shall be returned and sworn, and shall proceed in the manner provided by the laws relating to grand juries. Such *53 special grand jury may be called and discharge its duties either before, during or after any session of the regular grand jury, and its proceedings shall be independent of the proceedings of the regular grand jury, but of the same force and effect/’
Plaintiff claims that that seetion violates the Constitution of Ohio in the three following respects:
1st: Said statute is in violation of Sections 1 and 2 of Article X of the Constitution of Ohio.
2d: Said statute permits the contemporaneous sittings of two grand juries in the same county, which are entirely independent of each other and whose official actions may nullify each other, all of which under the constitution is violative of the public policy pertaining to grand juries.
• 3d: That said statute attempts to confer judicial power upon the attorney general of Ohio, in that it vests him with discretion to decide when a special grand jury shall be called.
In order that a statute shall fall because it is in conflict with the constitution, it is necessary that conflict shall be so clear and irreconcilable that both constitution and statute cannot operate at the same time and upon the same subject-matter.
It has been further repeatedly held that the word “clear,” as herein used, must be “beyond a reasonable doubt;” that if any doubt exists as to whether or not the statute is irreconcilably in conflict such doubt is to be resolved in favor of the validity of the statute.
With these fundamental rules, in mind, let us examine the specific contentions of the plaintiff. The only reference in the Constitution of Ohio to *54 grand juries is in Section 10, Article I of the Bill of Rights, which, so far as pertinent here, reads as follows:
“No person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur, in finding such indictment shall be determined by law.”
This constitutional provision, at the time of its adoption, assumed the grand jury to be an existing institution in Ohio; or, in short, recognized the grand jury as it existed at common law. It is unnecessary to trace the earliest history of the grand jury further than to say that it has existed under the common law for centuries, and, while originally it was a body not only of accusers but of tryers, for centuries at least it has acted only in the former capacity. Its adoption in this country both in federal and state jurisdictions has no doubt been upon the theory that it was one of the most substantial and serviceable guarantees against official tyranny, malicious prosecution, and ill-advised and expensive trials, which might generally be avoided if the formal accusation of crime were first made by one’s peers, as represented by the grand jury. One’s individual rights are those safeguarded against private malice, party passion or governmental abuse. The standard oath of the grand jury is almost as old as the institution itself. It is aptly expressed in the Ohio statute, Section 13556, General Code:
*55 “When the foreman is appointed, an oath shall be administered to him in the following words: •‘Saving yourself and fellow jurors, you, as foreman of this grand inquest, shall diligently inquire, and true presentment make, of all such matters and things as shall be given you in charge, or otherwise come to your knowledge, touching the present service; the counsel of the state, your own and your fellows, you shall keep secret, unless called on in a court of justice to make disclosures; and you shall present no person through malice, hatred, or ill-will, nor shall you leave any person unpresented through fear, favor, or affection, or for any reward, or hope thereof; but in all your presentments you shall present the truth, the whole truth, and nothing but the truth, according to the best of your skill and understanding.’ ”
It will be observed that the inquiry made, and the official presentment thereof, exempt nobody but the jurors. The prosecuting attorney may be indicted, the common pleas judge may be indicted, or any other citizen, private or official.
In short, the grand jury belongs to the people, to the government, and is not an adjunct of the court.- The grand jury sits upon its own adjournments, and is comparatively without limit in the scope of its investigation, the bills that it may return, or the general findings that it may make. In the deliberations of the grand jury, no person, not even the court, the prosecuting attorney, the attorney general or the jury’s own stenographer, can be present when it is deliberating upon the facts of a case, discussing and determining whether or not *56 it shall vote a bill of indictment. The independence and integrity of the grand jury, .both under the common law and our state constitution, are in no wise invaded by the statute in question, since the attorney general exercises only the same powers and the same rights as does the prosecuting attorney under the same statute.
We come now to the pertinent matter complained of by the plaintiff concerning the special provisions of the constitution that were violated by the act in question. What are Sections 1 and 2 of Article X?
Section 1: The general assembly shall provide, by law, for the election of such county and township officers as may be necessary.
Section 2: County officers shall be elected on the first Tuesday after thé first Monday in November, by the electors of each county, in such manner, and for such term, not exceeding three years, as may be provided by law.
Surely, there is nothing in these sections that applies to the question raised in this cause. The sections apply only to the proposition that you cannot create public officers for townships and counties, to be selected by appointment: that, in short, all such officers must be elected. But it is claimed that the attorney general in exercising the powers he does under this statute, is exercising the functions of a county officer; that he is not elected as such; and that, in short, the attorney general is here usurping, contrary to the constitution, the functions of the prosecuting attorney as an officer of the county.
*57 Again, it will be helpful to see what the state constitution says about the attorney general. Section 1, Art. Ill, reads: “The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of state, treasurer of state, and an attorney general, who shall be elected,” etc. So that the attorney general of Ohio is a constitutional officer of the state, in the executive department thereof, chargeable with such duties as usually pertain to an attorney general, and especially with those delegated to him by the general assembly of Ohio, exactly as duties are delegated to the other executive officers of the state, the lieutenant governor, secretary of state, auditor of state, treasurer of state and any others created.
Now, as to the prosecuting attorney of a county, he is not a constitutional officer. He exists only by virtue of the favor of the general assembly of Ohio, under Section 1, Article X, wherein the general assembly is authorized to “provide, by law, for the election of such county and township officers as may be necessary.” The general assembly of Ohio that passed the act providing for the prosecuting attorney of each county may tomorrow abolish the office and create a new one, or entirely change the duties of the office.
Counties are not separate political entities, but are created only for the purpose of aiding the state in its general plan and policy of government. They have always been counted as subordinate to the state in the exercise of governmental power, and especially in the exercise of police power. It is im *58 possible, of course, for the state to maintain law and order and enforce the acts of the general assembly of the state of Ohio except by acting through the several counties of the state, and the statute seems to have wisely provided that the attorney general, or general attorney of the state, shall act as the chief legal executive officer in that behalf. The general assembly has wisely contemplated that there may be emergencies that imperatively demand the presence and personal participation of the attorney general in advising grand juries as to the law of a case, and aiding them in the examination of witnesses, even to the exclusion of the local legal authorities. Indeed, the act in question in the case at bar contains a section recognizing this particular situation as justifying the amendment. Section 3 reads:
“This act is hereby declared to be an emergency act necessary for the immediate preservation of the public peace and safety. Such necessity exists because of the reason that an epidemic of crime prevails in some parts of the state resulting in the loss of life and property to many citizens, and it is essential that the attorney general, as the chief law officer of the state, and the courts of the state should be clothed with power sufficient to authorize the immediate institution of all investigations and prosecutions and the calling of special grand juries, appropriate for the speedy punishment of criminals and the termination of lawlessness.”
It would be a strange doctrine to announce that one of the state’s executive officers, expressly provided for by the constitution, might not legally ad *59 vise and aid the grand jury in its inquest as to crimes and offenses committed against the state. It would be more than, passing strange to hold that such officer in the exercise of a sound discretion could not be authorized by the general assembly of Ohio to aid in the exercise of the state’s police power through the efficient arm of the grand jury.
The claim, that the doctrine of home rule, which is recognized by Sections 1 and 2, Article X, supra, is invaded, is not justified. The constitution in no wise makes any provision for home rule in counties, save as such inferentially appears. It does, however, make a straightforward, sweeping declaration in favor of home rule for municipalities. Would it be urged that by reason of such declaration of home rule in municipalities the attorney general in the exercise of his powers as an executive officer of the state would be excluded from his duties as law enforcer in the municipality, when the criminal laws of the state had been invaded and atrociously violated? That would be running the reason of home rule argument into the ground and making it ridiculous.
We find no conflict between the act in question and Sections 1 and 2 of Article X.
We do not regard as persuasive the claim that two grand juries acting independently of each other would likely result in confusion, that each would nullify the official acts, of the other, contrary to the spirit and public policy of the constitution. Grand juries as they are now constituted frequently return no bills, where succeeding grand juries find sufficient reason to return true bills. One petit *60 jury, dealing with the same essential facts, frequently disagrees with another petit jury in some other court of the same county; but such is never presented as a reason for constitutional conflict.
. To argue that a county could have but one grand jury to investigate high crimes and misdemeanors would be equivalent to saying that it should have but one petit jury to try such high crimes and misdemeanors. The whole matter is one for the discretion of the general assembly, dependent upon the public needs and public safety.
To say that the people may not provide full and adequate means of investigating crime and indicting those probably guilty thereof, by more than one complement of either grand juries or public officers, if necessary and authorized by the general assembly, is using the constitutional guarantees of the United States to uphold crime and disorder rather than to protect the citizenship in its rights to peace and safety.
The last contention made is that the statutes in question confer judicial power upon the attorney general. The whole matter of calling and organizing the grand jury has been wisely left from time immemorial to the legislative body. Its discretion is final in that behalf, so long as it in no wise interferes with the fairness, impartiality, independence and integrity of the grand jury. No claim is made in this case that there has been any interference; nor could there be, because the statute vests in the attorney general the identical powers that are vested in the prosecuting attorney, save and except his right to demand of the court the calling of such *61 grand jury in accordance with the statutes. And when so called, the grand inquest which it holds is simply one of investigation, one of inquiry and accusation.
The relations of the grand jury and the common pleas court are identical to those of the prosecuting attorney and the probate court in misdemeanor cases, and those of private individuals before any magistrate. The prosecuting attorney and the private citizen make their formal charges by affidavit. Surely there is no judicial function involved in finding and presenting the charge in the one court by indictment, in the case of felony, any more than there is in presenting it by affidavit, in another court, in the case of misdemeanor; much less is there any judicial function exercised in the attorney general’s demand fop a special grand jury.
In the exercise of the state police power it is fitting to recognize the chief law officer of the state and to require him, as far as may be necessary in his judgment, to aid all local authorities in enforcing the police powér of the state against all state offenders, fairly and fearlessly.
The act in question is a valid- and constitutional enactment and the writ is therefore denied.

Writ refused.

Nichols, C. J., Jones, Matthias, Johnson, Robinson and Merrell, JJ., concur.